UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| REBECCA BERNA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:07 CV 362 |
| | ) | |
| ETHAN ALLEN RETAIL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION and ORDER

Plaintiff Rebecca Berna ("Berna") filed this action alleging that her right to leave was interfered with, and her employment terminated, in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA"), that her termination also resulted from discrimination on account of her gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and that her termination was the result of retaliation violating both statutes. She also alleges a claim based on promissory estoppel under Indiana state law. Defendant Ethan Allen Retail, Inc. ("EA"), has moved for summary judgment raising a number of arguments, but as it turns out, one is largely dispositive, making it unnecessary for the court to address the others in detail.

There is a preliminary issue to addressing the merits of EA's summary judgment motion. Berna moved to strike (DE # 65) one of the exhibits, and all of its attachments, supporting EA's motion: the declaration of Maria Canhao, Exhibit 7 with attachments 7(A) through 7(O), comprised by CM/ECF 51-7 through 52-11. Berna argues that when

EA answered her interrogatories, several answers should have included Canhao as a person with knowledge about the case, and did not. More importantly, and the real matter of concern to Berna, is that Berna believes that Canhao's declaration contradicts the deposition testimony of other EA witnesses as to the hours Berna worked in the prior year, their testimony being that they did not know.

As Berna admits, EA did disclose Canhao in an amended RULE 26(a)(1) disclosure, about one month prior to the close of discovery. Thus, Berna could have deposed Canhao if she wished. In addition, reviewing the parties' arguments and Canhao's declaration, the court does not believe that EA answered Berna's interrogatories evasively or improperly. Canhao's knowledge (and purpose as a potential witness) appears to be limited to authenticating EA documents; she does not have personal knowledge concerning the circumstances of the case. Last, the court does not believe that Canhao contradicts the other EA witnesses Berna deposed regarding her hours worked; but more importantly, for the purposes of the analysis that follows, the court accepts Berna's view of the evidence, that EA individuals involved in the events in question—in particular Regina Leuci—did not have actual knowledge of how many hours Berna had worked in the prior year. Thus, the Canhao declaration causes Berna no prejudice, and her motion to strike (DE # 65) is **DENIED**.

Getting to the heart of the matter, RULE 56 of THE FEDERAL RULES OF CIVIL PROCEDURE states that a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." FED. R. CIV. P. 56(a). A summary judgment is required, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (commenting on portions of RULE 56(c) which, on December 1, 2010, were moved to subpart (a)). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986); *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.,* 45 F.3d 231, 234 (7th Cir. 1995); *Doe,* 42 F.3d at 443.

By way of background to provide context for the analysis that follows—but, while largely undisputed, not to be taken as undisputed facts, or disputed facts resolved in plaintiff's favor—defendant EA is a national retailer of home furnishings, many of which are sold under the "Ethan Allen" brand name. EA operates its own retail

3

stores. It also licenses its name to others who operate independently-owned retail stores.

Berna began her employment with an independent licensee, Georgetown Manor of Merrillville, Inc. ("Georgetown Manor"), in late 2001 as a part-time "Designer." Georgetown Manor operated a second store in Mishawaka, Indiana. Berna thrived and by 2006 had risen, still working part-time, to the position of "Project Manager." In August 2006 Georgetown Manor sold its assets to EA, and EA then operated the former Georgetown Manor retail stores as its own corporate-owned retail stores, using its own management structure. EA invited those who had been employed by Georgetown Manor to apply for positions with EA. Berna applied and was offered what was essentially her old job as Project Manager, but which EA considered to be a full-time, not part-time, position. Berna turned down the offer because she wanted to continue working part-time. EA then offered her a part-time "Visual Merchandiser" position, which she accepted, beginning her employment with EA on September 1, 2006. She was paid at the same rate that she had been previously, and typically worked 3 days a week for a total of 18-20 hours. The Project Manager position went to Deborah Keilman, making her Berna's immediate supervisor.

Although employees have to work for an employer for 12 months before they are eligible for leave under the FMLA, 29 U.S.C. § 2611(2)(A)(i), EA decided to take into account its newly-hired employees' prior employment with Georgetown Manor in determining whether to grant leave under the FMLA. On approximately October 17,

4

2006, Berna requested leave under the FMLA to care for a sick child, and her supervisor submitted the appropriate form (a "personnel action notice,' which EA commonly refers to as a "PAN") to EA's Human Resources Department. An EA "Benefits Department Representative" named Regina Leuci ("Leuci") approved the leave request—in error, as will soon be explained—and Berna was on leave until she returned on November 15, 2006.

On November 25, 2006, Berna requested FMLA leave again, in order to care for another sick child who had the chicken pox. For unknown reasons, although forms were again submitted to have the leave approved as FMLA leave, those forms never reached Leuci. Leuci was unaware that Berna was taking leave and never approved it, but Berna nonetheless remained on leave until she returned to work on December 6, 2006. On that day, she was issued a written "corrective action form" noting that she needed to work efficiently and review priorities and that her probationary period was being extended through the remainder of December, because there had been insufficient time to evaluate her performance because of her October and November leaves. (DE # 64-15.)[1]

On December 9, 2006, Berna told her supervisor that she needed to take more leave time because both of her sons had now contracted the chicken pox. Forms to have the leave approved under the FMLA were again submitted to EA's HR department, and

---

[1]  Throughout this opinion, citations to page numbers refer to the page number stamped by the CM/ECF system, and not the document's own internal pagination.

this time the forms did reach Leuci, on December 11, 2006. Reviewing the forms, Leuci almost immediately realized she had made an error in approving Berna's October leave request, because Berna had not worked enough hours in the prior 12 months to be eligible for FMLA leave. As stated above, in order to be eligible, an employee must have worked at least 1250 hours for the employer during the prior 12 months. 29 U.S.C. § 2611(2)(A)(ii). By the next day at the latest, Leuci advised Berna that her leave request was not being approved because she was ineligible for leave under the FMLA. This was confirmed to Berna in a written memo dated December 12, 2006, but which Berna did not receive until December 16.

On December 13, 2006, Berna's supervisor, Keilman, spoke to her about the leave denial and may have informed her that her position would be held open only until December 18, 2006. (The court accepts Berna's version that she did not know this until December 16.) Berna was told that if she did not return to work on December 18 her employment would be terminated. On December 16, 2006, her supervisor again (or, for the first time) told Berna that she had to return to work on December 18, or she would be terminated. Berna did not return to work on December 18 and, as she had been warned, her employment was terminated.

## ANALYSIS

### *FMLA Claims*

To prevail on an  FMLA interference claim, an employee must show that: (1) she was eligible for FMLA protection; (2) her employer was covered by the FMLA; (3) she

was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take FMLA leave; and (5) her employer denied her the right to FMLA benefits. *Nicholson v. Pulte Homes Corp.*, – F.3d –, 2012 WL 3217620 at *4 (7th Cir. 2012). This case hinges on the first element, because there is one fact that Berna agrees is undisputed, and which is EA's primary argument for a summary judgment on Berna's FMLA claims, no matter how she casts them.

During the year prior to her December leave request, Berna did not work the 1250 hours required to make her an employee eligible for leave under the FMLA,[2] 29 U.S.C. § 2611(2)(A)(ii), and this is dispositive, or nearly so, of all of her claims under the FMLA. Berna does not dispute that she did not work the requisite 1250 hours. She argues instead that this does not matter.

Berna argues that at the time Leuci disapproved the leave request, Leuci did not know exactly how many hours Berna had worked in the prior year, only that Berna was part-time.[3] Because Leuci had approved Berna's first leave request in October, and did

---

[2] Berna worked 852.37 hours for Georgetown Manor during the period October 9, 2005, through August 31, 2006. She worked 204.06 hours for EA from September 1, 2006 through December 9, 2006. (DE # 51-7 at 3, ¶ 5(a); DE 51-10 at 1-18; DE # 52-12 at 3, ¶ 7, ¶ 8; DE # 52-13 at 1-5.)

[3] Leuci explained in her deposition that she had access to payroll records showing how many hours Berna had worked since being employed by EA, but not prior to that, when Georgetown Manor employed her. See DE # 64-26 at 10, l. 2-25; at 11, l. 1-7. To the extent that Berna is arguing that Leuci's lack of definite knowledge of the hours Berna worked means that EA cannot raise her ineligibility as a defense, the court disagrees. First, strictly speaking, Leuci's knowledge is irrelevant: Berna either was an eligible employee, or she wasn't. In addition, based on the payroll records Leuci did have access to, it wasn't hard for her to make an educated guess—which turned out

7

not advise Berna prior to Berna's starting the December leave period that the leave was not approved, the regulations implementing the FMLA, specifically 29 C.F.R. § 825.110(d), prohibit EA from making any subsequent challenge to Berna's eligibility: "If the employer confirms eligibility at the time the notice for leave is received, the employer may not subsequently challenge the employee's eligibility." (DE # 62 at 5, quoting 29 C.F.R. § 825.110(d) (2006).)

The problem with this argument is that, as explained in *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579, 582-83 (7th Cir. 2000), that portion of the regulation was invalid. (The court says "was" because in 2009, that portion was finally excised.) As the court explained in *Dormeyer*, the Department of Labor's rule-making authority doesn't allow it to extend coverage to those ineligible under the Act. 223 F.3d at 582. Thus, an employee who is ineligible under the statutory terms has only the possibility of arguing that elements of traditional estoppel exist: "an employer who by his silence misled an employee concerning the employee's entitlement to family leave might, if the employee reasonably relied and was harmed as a result, be estopped to plead the defense of ineligibility to the employee's claim of entitlement to family leave." *Id*.

That—estoppel—is exactly what comprises Berna's main argument in opposition: "It was not until after she [Berna] was granted her third leave and was well into her third leave that she was ambushed by EA and told that it would be rejected

to be correct—about Berna's eligibility based on her part-time status. (See DE # 64-26 at 14, l. 20-24.) Even if Berna was working three eight-hour days, 52 weeks a year, that amounts to 1248 hours.

8

with an arbitrary deadline of December 18." (DE # 62 at 6.) The traditional elements of estoppel are: 1) a misrepresentation made by the party who is to be estopped; 2) reasonable reliance on that misrepresentation; and 3) that reasonable reliance results in a detriment to the party asserting estoppel. *Kennedy v. United States*, 965 F.2d 413, 417 (7th Cir. 1992).

As an initial matter, the court notes that it is possible that equitable estoppel, used to block EA's defense of ineligibility, may not even be available to Berna. Although *Dormeyer* suggested it is, that is an assumption which has not been decided. *Peters v. Gilead Sciences, Inc.*, 533 F.3d 594, 600 (7th Cir. 2008). Proceeding on the assumption that estoppel is available to Berna, her invocation of the doctrine nevertheless fails. The second element of the doctrine requires *reasonable* reliance, and without evidence of actual reliance that is reasonable, estoppel fails. *Rager v. Dade Behring, Inc.*, 210 F.3d 776, 779 (7th Cir. 2000). Berna cannot establish actual reasonable reliance for two reasons.[4]

---

[4] The court is also of the opinion that Berna cannot establish the first element of estoppel, that EA made a misrepresentation. EA never told Berna that her December request for leave qualified as FMLA leave. Berna's argument is that when EA approved her first request for FMLA leave, in October, it told her that she qualified for 12 weeks of FMLA leave, and she is relying on that representation. Even if that had been true, for Berna or any employee, a subsequent request for leave, two months later, might not qualify for any of several reasons, such as a deficiency in the number of hours worked in the preceding 12 months, or a failure to medically document the need for leave. Thus, any representation about eligibility for leave is limited to the period of leave it is made with respect to, and should not be viewed, as Berna would have it, as a representation applicable to all future leave periods (unless intermittent leave has been granted, which is not the case here). Nevertheless, because it is clear that her reliance was unreasonable, the court prefers to decide the case on that issue.

9

First, a party's reliance on a misrepresentation is not reasonable if the party knows the truth, or in the exercise of reasonable diligence, could discover the truth. *Heckler v. Comm'y Health Svcs. of Crawford County, Inc.*, 467 U.S. 51, 59 n. 10 (1984). It is undisputed that in the year prior to her December leave request, Berna was almost 200 hours short of the 1250 hour minimum necessary to make her eligible for FMLA leave. This was information easily within her knowledge, either from memory of her usual working hours, or from examination of her own pay records.[5] Her own actual or constructive knowledge of the hours she had worked makes her reliance unreasonable. *See Murphy v. North American Lighting*, 540 F. Supp.2d 1018, 1021-22 (C.D. Ill. 2008).

Second, it is undisputed that on December 12, 2012, only the third day of her requested leave period and only the third day after she had requested that leave, both Christine Bonnell (another member of EA's Human Resources department with responsibilities for the store where Berna worked) and Leuci informed her that she was not eligible for leave and that her request would not be approved.[6] At that point, any reliance by Berna on any prior representation that she was eligible for leave under the FMLA ceased to be reasonable, if it ever were. EA then informed Berna, no later than

---

[5] Berna nearly admitted this in her deposition, stating that she "didn't know" if she had worked the necessary 1250 hours in the prior year but "believed" that she was "close." (DE # 51-6 at 24, l. 17.)

[6] Berna admitted this in her deposition. (DE # 51-6 at 54, l. 3-8.) EA maintains that Leuci told Berna this the day before, on December 11, but the court accepts Berna's version for present purposes.

10

December 16,[7] that if she did not return to work by December 18, her employment would be terminated.

Berna argues that her reliance was nevertheless reasonable because at the point when she was informed that she was ineligible and that her leave would not be approved, she "was at home with sick children, no one else to take care of them and her husband was out of town on business." (DE # 62 at 6; DE # 51-6 at 56-57, l. 25; l. 1-2.) However, she has cited no precedent to support her assertion that this unfortunate circumstance somehow makes her reliance reasonable. After being informed of her ineligibility on the 12th, she had over five days to obtain alternative care for her children. Her inability to do so does not act as a sword which she can use to strike down EA's defense that she was ineligible for FMLA leave. Because Berna was never eligible for leave under the FMLA and cannot establish the elements of estoppel, EA is entitled to summary judgment of her claim that it violated the FMLA.

This also means that Berna's claim based on estoppel under Indiana law fails. Although estoppel as a way to block an ineligibility defense and an estoppel claim under state law are not the same thing, *Peters*, 533 F.3d at 600-01, they do share the common element requiring reasonable reliance by the party claiming the estoppel.

_____

[7] EA maintains that it informed Berna on December 13 of the December 18 deadline to return to work, but the deposition pages EA cites, from Bonnell's, Keilman's and Berna's depositions (see DE # 50 at 21-22, ¶ 42), does not support that assertion. (In Keilman's case, EA is relying on the assumption in the questions asked, rather than Keilman's answers. See # DE 51-2 at 27, l. 12-16; l. 21-25.) In any event, even if it did, for present purposes the court accepts Berna's version, that she was first given the deadline of the 18th two days earlier on the 16th. (DE # 51-6 at 56, l. 5-8.)

*Brown v. Branch*, 758 N.E.2d 48, 52 (Ind. 2001). For the reasons above, Berna's reliance was not reasonable.

Berna argues that even if her FMLA interference clam fails, she can still establish a claim for EA having retaliated against her for attempting to exercise her rights under the FMLA. Like other retaliation claims, a plaintiff alleging FMLA retaliation can proceed using either the direct, or indirect, method. *Nicholson*, 2012 WL 3217620 at *7. Under the direct method, a plaintiff must point to evidence showing that she: 1) engaged in a statutorily-protected activity; 2) suffered an adverse employment action; and 3) a causal connection exists between the two events. *See Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 657 (7th Cir. 2012) (stating elements in context of ADEA claim).

Under the indirect method, a plaintiff must show: 1) she engaged in a statutorily-protected activity; 2) she was meeting her employer's legitimate expectations; 3) she suffered an adverse employment action; and 4) she was treated less favorably than similarly-situated employees who did not engage in the protected activity. *Id.* Once a plaintiff does so, the familiar "burden-shifting" method is employed: the defendant must articulate a legitimate reason for the adverse action and, if it does so, the plaintiff must then offer evidence suggesting that reason is unworthy of belief and a pretext to cover an unlawful employment action. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012).

EA argues that Berna's FMLA retaliation claim fails as a matter of law because the FMLA prohibits only conduct which is in retaliation for the exercise, or attempted

exercise, of any "right" under the FMLA. *See* 29 U.S.C. § 2615; 29 C.F.R. § 825.220 (provisions which have been construed to create a cause of action for retaliation, *see Kauffman v. Federal Exp. Corp.*, 426 F.3d 880, 884 (7th Cir. 2005)). It follows, EA reasons, that because Berna was an ineligible employee who had no rights under the statute, she cannot have been retaliated against for attempting to exercise non-existent rights.

Berna's response is that EA has it wrong: the FMLA protects individuals, not just eligible employees, who oppose practices which they reasonably believe are unlawful under the act; and proceeding under either the direct, or indirect method of proof, all she needs to establish is that she suffered an adverse action of a nature which would dissuade a reasonable person or employee from exercising rights under the act. (DE # 62 at 8-9.) The court thinks that Berna is the one who has it wrong.

As to the first half of her argument, the provision she relies on states: "Individuals, and not merely employees, are protected from retaliation for opposing (e.g., filing a complaint about) any practice which is unlawful under the Act. They are similarly protected if they oppose any practice which they *reasonably believe* to be a violation of the Act or regulations." 29 C.F.R. § 825.220(e) (emphasis added). The problem is, Berna doesn't explain how she could "reasonably believe" any violation of the Act was occurring when she knew, or should have known, that because she had worked far fewer than 1250 hours in the prior year, she had no rights under the FMLA. As to the second half of her assertion, no adverse action could dissuade her from

13

exercising rights under the FMLA when she had no such rights to exercise.[8] Putting this in a nutshell contrary to her arguments, the party claiming retaliation "[t]o succeed . . . . must of course be entitled to FMLA benefits."[9] *Pagel v. TIN Inc.*, 2012 WL 3217623 at *8 (7th Cir. 2012) (discussing claim under direct method); *Nicholson*, 2012 WL 3217620 at *7 ("[a]s a threshold matter, Nicholson's retaliation claim requires some evidence that she engaged in FMLA-protected activity"); *see Morehardt v. Spirit Airlines, Inc.*, 174 F. Supp.2d 1272, 1280 (M.D. Fla. 2001) (collecting cases holding that employee ineligible for leave cannot establish retaliation claim as a matter of law).

It is true that Berna's responsive argument is somewhat more complicated than this. Its essence is that, even before EA discovered her ineligibility for FMLA leave, her supervisors were unhappy with the leave she had taken which they mistakenly thought was FMLA leave, and had decided to terminate her.[10] Thus, when they carried out that

---

[8] In addition, part of Berna's claim is that EA retaliated against her on December 6 when it issued her a written "corrective action form" and extended her probationary period. (DE # 64-15.) Yet neither of these events dissuaded her from requesting leave again only three days later on December 9.

[9] Eligibility for FMLA benefits, and entitlement to those benefits, are two different things. However, an ineligible employee can never be entitled to benefits, and so *Pagel* logically applies.

[10] The evidence viewed favorably to Berna creates a question of fact, at a minimum, that her termination was being considered even before she was given the ultimatum to return to work by December 18 or be terminated. *See* DE # 64-12 at 2, e-mail from Kevin Kramer (an EA Regional Manager responsible for 13 stores including the one in which Berna worked, see DE # 64-28 at 6, l. 13; 7, l. 4-7) dated December 12 stating "I think it is time to terminate her employment," and related e-mail correspondence.

plan by delivering the ultimatum to return to work by December 18, they were retaliating for what had previously been thought by all parties to be proper FMLA leave. Based on the court's understanding of the above precedent, that wouldn't matter: because Berna was never eligible for FMLA leave, she was not protected by the Act, and EA could act against her for what it considered to be excessive absenteeism.

Assuming the court's understanding is wrong, however, based on evidence such as that in n. 10, *supra* at 14, there is evidence supporting Berna's contention that EA took her prior absences, when all thought she was taking FMLA leave, into account in deciding that she should be terminated. Whether the court considers this evidence using either the direct, or indirect method (Berna argues her case under both methods), the problem that remains is, once EA decided that Berna was ineligible for FMLA leave, it was free to tell her she had to return to work, and then fire her for her unexcused absence. *Hunt v. DaVita, Inc.*, 680 F.3d 775, 779-80 (7th Cir. 2012) ("[because employers are entitled to terminate at-will employees who do not return to work after their leave expires, it cannot be unlawful retaliation to terminate uniformly any employees because they did not return to work after their leave expired.")

At best then, this is a mixed-motive case, and EA is entitled to summary judgment if it establishes either that it would have taken the same action even absent the improper motive (direct method), or that it has a legitimate reason for taking the action it did, which is not a pretext (indirect method.) *See Twig v. Hawker Beech craft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011). EA specifically warned Berna that it would

15

terminate her employment if she did not return to work on December 18th, and when Berna defied that directive, it made good on its promise. In the court's view, a reasonable jury could view this evidence in only one way: that EA would have acted as it did even with an improper motive, and that EA's reason for its action is legitimate and non-pretextual. Thus, EA is entitled to summary judgment on Berna's FMLA retaliation claim.

*Title VII Claims*

As she sees it, "EA discriminated against Berna because of her sex for taking care of her children by demoting her from a project manager to a visual merchandiser, disciplining, extending her probationary period, and ultimately firing her for being a mother who took care of her 'sick children.'" (DE # 62 at 18.) Everything here except Berna's termination claim can be quickly cleared away.

First, the undisputed evidence flatly contradicts Berna's claim that EA demoted her from the Project Manager position she had held with Georgetown Manor. Georgetown Manor employed Berna in that position on a part-time basis. Besides the fact that it was not a demotion for her position to change when she was hired by a new employer—EA when it bought Georgetown Manor's business—when that transaction occurred, EA wanted the Project Manager to be full-time, and, *as Berna admitted in her deposition*, it offered the position to her, but she turned it down because she wanted to continue working part-time. (DE # 51-6 at 15; 68; 69). Thus, there was no demotion.

16

Second, as to the disciplinary action she complains of (that her job performance was formally criticized in a "corrective action form" she was given when she returned to work on December 6, see DE # 64-15) and the extension of her probationary period,[11] neither is sufficient to constitute adverse action under Title VII. To be actionable under Title VII, an adverse employment action must be something that "significantly alters the terms and conditions of employment" resulting in a "tangible job consequence." *Threatt v. Donovan*, 380 Fed. Appx. 544, 548 7th Cir. 2010). Although in some cases being *placed* on probation can be considered an adverse action, *see Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 n. 31 (7th Cir. 2012), in this case Berna merely had her probationary period extended, for slightly less than a month. Under the circumstances, this was not an adverse employment action. *Id*.

This leaves only the claim that she was terminated in violation of Title VII, both on account of her gender and in retaliation for her complaining about her treatment. To succeed on her claim, Berna can, again, attempt to support her claim in one of two ways: either by providing direct or circumstantial evidence that unlawful discrimination motivated the employment decision (known as the direct method), or by relying on the indirect, burden-shifting method outlined in *McDonnell Douglas. Nichols*

---

[11] It should also be noted that evidence contemporaneous with the decision to extend Berna's probationary period indicates that EA did so because, due to her October and November leaves, it had had insufficient time during her probationary period to evaluate her. (DE # 64-15 at 3.) This is logical and plausible—she had been on leave during a significant portion of her probationary period—and Berna has not pointed to sufficient evidence to suggest that reason is a pretext for discrimination.

*v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 783 (7th Cir. 2007) (citing *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 736-37 (7th Cir. 2006)). EA's motion for summary judgment makes the familiar argument that Berna lacks sufficient evidence under either approach to support her claim and so she does not create an issue of fact requiring a trial.

As to the indirect method, Berna must first build a *prima facie* case of gender discrimination by identifying evidence that establishes: (1) she belonged to a protected class; (2) she was meeting her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated individuals who were not in her protected class more favorably.[12] *See McDonnell Douglas,* 411 U.S. 792, 802. If a plaintiff cannot establish a prima facie case, there is no need to move on to the remainder of the *McDonnell Douglas* analysis, that is, requiring the defendant to state a legitimate reason for its action, and considering whether that reason is a pretext for discrimination. *See Peele v. Country Mutual Ins. Co.*, 288 F.3d 319, 327 (7th Cir. 2002) ("If a plaintiff is unable to establish a *prima facie* case of employment

---

[12]   The elements of a prima facie case vary based on the factual circumstances, *McDonnell Douglas,* 411 U.S. at 802 n.13, and the fourth element is often inaccurately phrased. *See Pantoja v. American NTN Bearing Mfg. Corp.*, 495 F.3d 840, 845-46 (7th Cir. 2007). The treatment of similarly-situated employees is relevant to, and so the fourth element in, traditional reduction-in-force cases, *see, e.g., Bellaver v. Quanex Corp.*, 200 F.3d 485, 494 (7th Cir. 2000); *Oxman v. WLS-TV*, 846 F.2d 448, 453-55 (7th Cir. 1988). In the present case, based on termination of employment, the fourth element is that the position remained available or was filled by someone else. *See, e.g., McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (fourth element rejected applicant must show is that position remained open and employer continued to seek similar applicants); *Tice v. Lampert Yards, Inc.*, 761 F.2d 1210, 1212 (7th Cir. 1985) (fourth element terminated employee must show is that employer replaced him). In the present case, it is undisputed that Berna was replaced.

discrimination under *McDonnell Douglas*, an employer may not be subjected to a pretext inquiry"); *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 (7th Cir. 1997) ("the prima facie case under *McDonnell Douglas* must be established and not merely incanted.")

In this case, elements one, three and four exist, and the court need only address the second, which, appropriately, is the focus of EA's argument for summary judgment. There is not too much that needs to be said. EA told Berna she had to return to work by December 18, or she would be fired. She defied that order and was in fact fired. That shows she was not meeting EA's legitimate expectations: "a refusal to comply with the lawful order of one's employer is indeed not conduct protected" by anti-discrimination laws. *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 76667 (7th Cir. 2006).

That would be the end of the discussion, except for one thing. Berna argues that the order was not legitimate, it was a phony way to set her up for a dismissal. This is, Berna argues, because it was unreasonable for EA to deny her the additional two days of leave she needed, until December 20th, before returning to work; particularly where her replacement did not start by the 20th and EA's written employment policy states that an employee who does not return from leave is deemed to have voluntarily resigned after three days.[13] (DE # 62 at 23 n. 6.) The latter half of this argument is not relevant: failing to return from a leave of absence is not the same as failing to abide by a

---

[13] "Failure to return [from a personal leave of absence] is the same as voluntary resignation effective three days after the day you were due back." (DE # 64-21 at 8.)

specific order to return to work or be fired.[14] As to whether it was unreasonable for EA
to refuse to give Berna two additional days,[15] courts are not to second-guess
employment decisions, even harsh ones. This is the classic case of an employer being
able to throw away a square peg which doesn't fit into a round hole. *Palucki v. Sears,
Roebuck & Co.*, 879 F.2d 1568, 1571 (7th Cir. 1989). In sum, Berna cannot establish a *prima
facie* case using the indirect method.

Berna also argues, however, that she has evidence to prove her case using the
direct method. The direct method can be utilized, in confusingly-redundant phrasing,
with direct evidence, such as an admission by the decision-maker that the adverse
employment action was motivated by discriminatory animus, which allows the trier of
fact to find discrimination without relying on inference or presumption. *Nichols,*
510 F.3d at 781; *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 272 (7th Cir. 2004).
However, circumstantial evidence is more commonly relied upon, allowing the trier of
fact to find discrimination through inference. *Nichols*, 510 F.3d at 781. The three

---

[14] At various points in her brief (e.g., DE # 62 at 24), Berna also argues that her
replacement, Kevin Koch, took three days off without approval and was not disciplined.
The evidence she provides of this event indicates he was verbally reprimanded; more
importantly, it shows that Koch's unexcused time off was in October, 2008. (DE # 64-
31.) That has no relevance to employment decisions concerning Berna that occurred
nearly two years later. *Cf. Cullen v. Olin Corp.*, 195 F.3d 317, 324 (7th Cir. 1999).

[15] Berna has not pointed to evidence establishing the specific lag between
December 20 and her replacement starting—whether it was short or long. The fact that
it may have taken some time for EA to find a replacement for Berna after she failed to
return to work does not show its decision to terminate her employment for refusing to
follow its order was unreasonable.

categories of circumstantial evidence that can be used together to show a "convincing mosaic" of discrimination are:

> 1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; 2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and 3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination.

*Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009) (citing *Sun v. Bd. of Trs. of Univ. of Ill.*, 473 F.3d 799, 812 (7th Cir. 2007)); *Troupe v. May Dep't Stores, Inc.*, 20 F.3d 734, 736 (7th Cir. 1994)).

Berna argues that a "convincing mosaic" of discrimination is created by the facts that: 1) "[i]mmediately after the EA takeover" she was "demoted" (DE # 62 at 19); 2) while Berna was out on her second leave period in November, her superiors discussed terminating her "because of her absence to care for her children" (*Id.*; DE # 64-14); and 3) that while she was on her third leave on December 12, Carrie Rezmer, EA's Chicago District Operations Manager, wrote in an e-mail addressed to Kramer and Bonnell, cc'd to Keilman, that if Berna had "no one to watch her children everytime [sic] they get sick, she will be taking off," (DE # 62 at 20; DE # 64-12 at 2); and 4) Berna was replaced by a male, Kevin Koch, who had no children. (DE # 62 at 20). Berna's argument is that this evidence shows that EA was basing its decisions with respect to her employment on stereotypical assumptions that women are the primary care-givers

for children, and so is "direct proof of EA's [unlawful] motivation to 'assist' Berna in her family responsibilities to care for her children." (DE # 62 at 18-19 & n. 4; 21.)

Regarding Berna's first point, as discussed above, she was never demoted, so that piece of evidence does not fit into the mosaic. Regarding her second point, it is Berna's characterization of the evidence that there was a November discussion to terminate her because of her absence "to care for her children," but the evidence she cites, a handwritten note[16] (DE #64-14), does not mention her children, only that she was out on FMLA leave. Thus, this also does not fit into a mosaic. Berna's fourth point, that she was replaced by a childless male, Koch, adds little if anything to the mosaic. EA did not hire Koch to replace Berna; he was already employed as a visual merchandiser in another store, and began splitting his time between the two stores. (DE # 64-29 at 37.) In addition, the evidence Berna cites doesn't definitively establish that Koch was childless; more importantly, it does show that Kramer, who made the decision to use Koch to replace Berna (according to Rezmer), did not know whether or not Koch had children. (DE # 64-28 at 20, l. 14-15; DE # 64-29 at 25, l. 9-11; at 26, l. 11-12; DE # 64-25 at 46, l. 13-17.)

This leaves Berna with only the evidence of Rezmer's e-mail stating that if Berna had "no one to watch her children everytime they get sick, she will be taking off." (DE # 64-12 at 2). This is a slim reed, and not enough to complete a mosaic of

---

[16] The court notes that Berna has not authenticated this note or identified its author.

discrimination.[17] As discussed above in regard to Berna's FMLA retaliation claim, at best this evidence might show that some improper motivation was involved, but given that Berna was given a direct order to return to work—which she defied—the case becomes one involving mixed motives. Although mixed-motive cases are not normally "grist for the summary-judgment mill," *Adler v. Madigan,* 939 F.2d 476, 479 (7th Cir. 1991), a summary judgment is proper if the evidence "points inescapably" in the employer's favor. *Frobose v. American Sav. and Loan Ass'n of Danville*, 152 F.3d 602, 615 (7th Cir. 1998) (quoting *Visser v. Packer Eng'g Assocs. Inc.*, 924 F.2d 655, 662 (7th Cir. 1991) (Flaum, J., dissenting). That is the case here. EA told Berna she would be fired if she didn't return to work on the 18th. She did not return to work, and EA did as it promised. A reasonable jury could only find that the reason Berna was terminated is that she ignored EA's specific order.

Last, Berna argues that she has evidence which establishes that the adverse action she suffered was in retaliation for her engaging in conduct protected by Title VII. As an initial matter, besides the fact, discussed above, that the disciplinary action and extension of her probationary period were not sufficiently adverse, those events took place before December 11 or 12, the earliest time that Berna complained that she was

---

[17] Although this comment might be stereotypical, it is also true that Berna had been absent from nearly 50% of her probationary period in order to care for her children. Therefore, Rezmer's comment simply reflects that fact (albeit in unfortunate terms which, construed most favorably to Berna, suggest bias).

being treated unfairly on account of her children. Thus, those events cannot be in retaliation for her exercise of Title VII rights, and her claim is limited to her termination.

Limiting consideration to the issue of retaliation in connection with her termination, simply put, the court does not understand Berna to be making a cogent argument. She reiterates, in one paragraph, her argument that she engaged in protected activity by taking FMLA leave, which the court has decided to the contrary above. She adds only that, after her December leave request was denied, she then complained that she was being forced to choose between her family and her job, and Bonnell replied that it was not Berna's fault she had "sickly kids." (DE # 62 at 22.)

No citation to evidence of Bonnell's comment is provided. Moreover, as the court has explained above, the undisputed evidence shows that Berna was not meeting EA's legitimate expectations and so cannot make out an indirect-method case, and she lacks sufficient evidence to establish a direct method case.[18] Beyond that, Berna's argument is that the decision to terminate her was made prior to her being informed that her leave was not approved, and was discussed as early as the time she was on leave in November. In other words, her own theory of the evidence breaks any causal connection between her complaints about how she was being treated and her

---

[18] Berna does not explain in her argument precisely what her direct evidence of retaliation is. She appears to be relying on the "sickly kids" comment and her argument that Berna was being subjected to the stereotype that women are primary child-care providers and so cannot be as devoted to their jobs as men.

termination. In short, the court does not believe that Berna has presented a factual issue requiring a jury determination on her claim of retaliation in violation of Title VII.

## *CONCLUSION*

For the reasons explained above, Berna has not shown that there are genuine issues of fact supporting the elements of her claims and requiring a trial, and EA's motion for summary judgment (DE # 49) is **GRANTED**. The clerk shall enter final judgment in favor of defendant Ethan Allen Retail, Inc., and plaintiff shall take nothing by way of her complaint.

**SO ORDERED.**

Date: August 30, 2012

 s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT